UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JAMES MATLEAN,

                    Petitioner,

        v.

BRIAN WILLIAMS, et al.,

                    Respondents.

Case No. 3:16-cv-00233-HDM-CLB

ORDER

Petitioner James Matlean has filed a habeas petition pursuant to 28 U.S.C. § 2254 challenging his state court conviction, pursuant to a guilty plea, of first-degree murder and conspiracy to commit murder. (ECF No. 19 at 7). The second amended petition, filed by counsel, is before the court for review of the merits of the surviving claims. (ECF No. 19). Respondents have answered (ECF No. 40), and Matlean has replied (ECF No. 44).

Matlean has also filed a motion for evidentiary hearing. (ECF No. 45). Respondents have opposed (ECF No. 48), and Matlean has replied (ECF No. 49).

**I. Background**

On February 21, 2008, James Matlean broke into the home of Ben and Melissa Oxley, where he shot and killed Ben as he slept. (ECF No. 20-7 at 8-10; ECF No. 23-26 (Tr. 29)). Although Matlean also intended to kill Melissa, who was sleeping next to Ben, he became afraid and left before doing so. (ECF No. 20-7 at 17).

At the time of the murder, Matlean was living with and dating Ben's ex-wife, Dawn. (ECF No. 23-3 (Tr. 57, 108)). Dawn was angry at Ben because he had custody of their daughter. (*Id.* at 75, 107, 125). On the night of February 20, 2008, Matlean and Dawn were drinking when Dawn stated she wanted Ben dead, and Matlean, in response, offered to kill Ben with a shotgun. (*Id.* at 59-60).

Also present during this conversation were Dawn's son, Devin, and Devin's friend. According to Devin, Dawn said she wanted Ben dead, Matlean said he would go kill him now, and she said either "I want you to go kill him" or "I want him dead now." (*Id.* at 59-60). Matlean said he would blow Ben away with a shotgun. (*Id.* at 61).

According to Matlean, Dawn solicited Ben's murder and helped him commit it. Matlean claims that Dawn drew a diagram of Ben's house, told him where to go in the house, and accompanied him to the house that night. (ECF No. 20-7 at 8-10; ECF No. 23-26 at 29, 31-34).

Dawn, on the other hand, denies asking Matlean to kill Ben, and instead asserts that what she really said was that she wanted Ben to fall off the face of the earth, and when Matlean asked if she really wanted Ben killed, she told him "no." (ECF No. 23-3 (Tr. 112-14)). Dawn further denies assisting Matlean in the murder or accompanying him to Ben's house. Instead, according to Dawn, she fell asleep on the couch after telling Matlean not to kill Ben, only to be awoken by him some time later with the words, "It's done." (*Id.* at 115). Matlean then asked Dawn to follow him to his mom's house so he could leave his truck there, which Dawn did. (*Id.* at 116-17).

In April 2008, a friend of Dawn's son, Devin, told authorities who were investigating the murder that the night of February 20, 2008, Matlean was drunk and talking about killing Ben with a shotgun. (*See* ECF No. 23-28 at 9).

In September 2008, Matlean told investigators that he overheard someone talking about throwing the murder the weapon into the Carson River. (*Id.* at 10-11).

In January 2009, an inmate who was in jail with Matlean told investigators that Matlean had said he lied about the firearm's location and was nervous that authorities would actually find it. (*Id.* at 11).

In August 2009, Dawn called the police and stated, "If I confess to the murder of my ex-husband, will you put me in prison?"[1] (ECF No. 23-3 (Tr. 147-48)). After several more interviews, Dawn was granted immunity in exchange for her testimony against Matlean. (*See id.* at 154).

In June 2010, Matlean was charged by way of criminal complaint with first degree murder with use of a deadly weapon. (ECF No. 23-2). After a two-day long preliminary examination, Matlean was bound over on the charges. (ECF Nos. 23-3 & 23-4). At the arraignment before Judge Gibbons, defense counsel stipulated that probable cause to bind Matlean over existed based on Devin's testimony, but that Dawn's testimony was unbelievable and insufficient to sustain charges. (ECF No. 23-6 (Tr. 5)).

On January 28, 2011, Matlean met with investigators and gave a statement confessing to the crime, but the statement was for the

---

[1] The PSR reflects that Dawn called stating, "I can't take it anymore. I did it. Take me to prison." (ECF No. 23-28 at 11).

3

purposes of plea negotiations only and could not be used against Matlean unless agreement was reached; the parties referred to this as his "Kastigar statement" throughout the proceedings. (ECF No. 20-7). In December 2011, Matlean entered into a plea agreement in which he agreed to plead guilty to an amended information charging him with first degree murder and conspiracy to commit murder, and the State agreed to recommend a sentence of life with the possibility of parole after 20 years on the murder charge, with a consecutive term of ten years with the possibility of parole on the conspiracy charge. (ECF Nos. 23-24 & 23-25). The plea agreement provided that

> at the time of sentencing the State may present arguments, facts and/or witnesses in support of the plea agreement. The State also reserves the right at sentencing to provide the Court with relevant information that may not be in the Court's possession; to call victim(s) to make victim impact statement(s); to question defendant's character witnesses; to comment on the circumstances of the crime and the defendant's criminal history, and; to correct factual misstatements made by the defendant or his/her character witnesses.

(ECF No. 23-25 at 2). The agreement also required Matlean to provide a truthful statement about the crime and allowed the State the right to withdraw from the plea agreement if that statement was false. (*Id*. at 2-3).

At the change of plea hearing on December 20, 2011, Matlean represented that he had read, understood and had no questions about the amended information and the plea agreement, and that he had gone over the whole agreement with his attorney before signing. (ECF No. 23-26 (Tr. 3-5)). He represented to the court that he was not pleading guilty under duress or any promises of leniency and

-- three times -- stated that he was not under the influence of
any controlled substances. (*Id.* at 18-20, 26).

Matlean indicated that he understood the three sentencing
options available to the court, including life without the
possibility of parole, and that the Division of Parole and
Probation would be making its own recommendation which might not
be the same as the parties' agreed-upon sentence. (*Id.* at 13-14,
17). Matlean indicated he understood that victim impact statements
might be made during his sentencing hearing and that the State
would not be able to control what they said. (*Id.* at 11-13).

The State also noted, and Matlean indicated he understood,
that the truthfulness of Matlean's "Kastigar statement" still had
to be investigated and evaluated. (*Id.* at 9-10, 17).

When asked about the facts of the crime, Matlean provided
several cogent and thorough answers to explain what happened that
night. (*Id.* at 30-34). He stated that although he was under the
influence of drugs and alcohol when he shot Ben, he had made a
choice to commit the murder and he knew what he was doing. (*Id.* at
35; 40-41).

Matlean's attorney, Kenneth Stover, indicated to the court
that he and Matlean had fully gone over the potential defenses in
the case, including diminished capacity, but that Matlean wanted
to plead guilty and accept moral responsibility for the crime.
(*Id.* at 21-22; 35-37). Stover said, "I didn't tell him to do this.
He told me he wanted to do this." (*Id.* at 22). When asked if Mr.
Stover's statements were accurate, Matlean replied "yes." (*Id.*)

The court asked Matlean several times if he still wanted to
plead guilty; each time Matlean responded that he did. (*Id.* at 16,

24, 44). The court accepted the plea as having been entered freely and voluntarily.

Sometime after the change of plea, Matlean asked Stover to file a motion to withdraw the plea. (ECF No. 23-32 at 5 n.7). Stover refused to do so. (*Id.*) Stover represented in writing and in court that Matlean asked to withdraw his plea because he felt that the court, in its many questions to him during the plea canvass, was suggesting that he should not plead. (*See id.*; ECF No. 23-30 (Tr. 53-54)).

On February 27, 2012, Matlean signed a written statement for purposes of sentencing. In it, Matlean said that after murdering Ben, he tried to drink his remorse away, and that "[i]f I were to have gone to trial like my attorney wanted to, I had a very good chance of walking away from this, but I would be walking right into the hands of death. Eventually I would have killed myself one way or another." (ECF No. 23-28 at 16). He expressed deep remorse and said that he wanted to take a plea in order to not put Ben's family through the traumatic events again. (*Id.*)

Sentencing took place on March 16, 2012. (ECF No. 23-30). Probation recommended a life without the possibility of parole on the murder charge. (ECF No. 23-28 at 15). The State asked for the sentence agreed upon by the parties in their agreement. (ECF No. 23-30 at 57).

A central point of discussion at sentencing involved whether Matlean had been truthful and whether his statement would be of use to the prosecution in bringing charges against Dawn. (*Id.* at 40).

The topic first arose during the testimony of Ron Elges, defendant's witness who had also happened to participate in the investigation of the crime. The court asked the prosecutor if he would be asking Elges any questions on the usefulness of Matlean's statement. (*Id.* at 39). The prosecutor declined. (*Id.*)

Later, in addressing the issue, the prosecutor argued that Matlean's and Dawn's statements were consistent in all but one respect: whether Dawn went with Matlean to Ben's or whether she stayed home. And he stated: "As we sit here today, I have insufficient evidence to tell you which one of them is telling the truth and which one is lying. There's arguments that could be made on both sides, but there's certainly not sufficient evidence to tell you that." (*Id.* at 58). The court asked if the prosecutor meant that there was insufficient corroborating evidence to charge Dawn, because an accomplice's testimony alone was not enough. (*Id.* at 59). The prosecutor agreed that's what he meant. (*Id.*)

The prosecutor further stated that he did not want it to sound as if Matlean didn't comply with the plea agreement, because Matlean did. (*Id.* at 59). The prosecutor also explained that Dawn did not have an immunity agreement; she had an agreement to cooperate and tell the truth. He stated that Dawn did cooperate because she testified but that it was still an open book on whether she had materially lied. (*Id.* at 61). The court responded: "Well, you can see the dilemma this creates for the court, because someone who is cooperating and truthful is a lot different than someone's whose [sic] lying and obstructing." (*Id.* at 61). The prosecutor responded, "Correct," and then turned to another topic. (*Id.* at 62).

Stover, for his part, did follow up on the court's inquiry by asking Elges whether he believed "only half the book of justice has been written in this case." Elges responded that there were two statement and it remained to be determined who was telling the truth, so until the absolute truth was determined, the case was not over. (*Id.* at 40). Stover then commented: "I'm at a loss to wonder why someone would think James is lying. He's going to prison for the rest of his life. What's he have to lie about?" (*Id.* at 40).

Later, Stover argued that Dawn "lied through her teeth" at the preliminary hearing and pointed out several reasons her testimony was suspect. (*Id.* at 46-47, 50-51). These reasons included the fact that Dawn initially said, "I did it," when contacting authorities, although she then she changed her mind and to say she didn't. (*Id.* at 52).

Another point touched on at sentencing was Matlean's decision to plead. Stover argued that he wanted to go to trial but that Matlean said he did not want to risk being found not guilty. (*Id.* at 48). The court asked if there was any chance that Matlean might be having buyer's remorse and whether he might argue that he was coerced or tricked into pleading. (*Id.* at 51-52). Stover responded that the court's careful plea canvass did cause Matlean to believe that the court did not want him to plead guilty, but that Stover explained to him that the court's questions were only to make sure that Stover was doing his job. (*Id.* at 53-54).

In his statement to the court, Matlean took responsibility for his actions and stated that pleading guilty was the only thing

he could do to make amends for his crime, and that he felt truly sorry for what he had done. (*Id.* at 78-79).

In pronouncing its sentence, the court stated that absent Matlean's cooperation, it would have been a very easy sentencing decision, because the crime was severe, traumatic and premeditated. (*Id.* at 79). It stated that Matlean's cooperation was a mitigating factor that made the decision more difficult. (*Id.* at 80). Nevertheless, in the end, the court sentenced Matlean to life without the possibility of parole on the murder charge, with a concurrent 4-10 years on the conspiracy charge. (ECF No. 23-31).

Stover immediately filed a motion for reconsideration. (ECF No. 23-32). In it, he argued, among other things, that the State erroneously suggested or allowed the court to believe that Matlean had not been cooperative or that his version of events could not be believed. (*See id.*) The State opposed by arguing, primarily, that the court was without jurisdiction to consider the defendant's motion. (ECF No. 23-33). In reply, counsel asked the court to construe his motion as a motion to withdraw plea. (ECF No. 23-34).

The motion was denied. (ECF No. 23-35). In its order, the court thoroughly explained the reasoning behind its sentencing determination, the factors both aggravating and mitigating. (*Id.* at 6-11). It explained that the extent of Matlean's cooperation was the most difficult factor to evaluate, as no charges had yet been brought against Dawn. (*Id.* at 9). But it explicitly noted that it made no finding as to whether Matlean was telling the truth or lying. (*Id.* at 9-10). It pointed out that the State neither implied the plea agreement was deficient nor that it should not be

honored. (Id. at 5). Finally, it noted that the questions it asked could have only helped Matlean because the court thought the recommended sentence was too lenient. (*Id.* at 11).

On appeal, the Nevada Supreme Court affirmed (ECF No. 23-40). Matlean then filed a state court petition for habeas relief, and counsel was appointed to assist him. (ECF Nos. 23-42 & 23-44). The state court conducted an evidentiary hearing at which Matlean testified. (ECF No. 23-53). During the hearing, Matlean testified repeatedly that he took the plea only because his attorney promised him $20,000 to do so, and also that the plea was not knowing and voluntary because he was under the influence of medications and did not understand what he was doing. (*See id.*) Although Matlean's trial counsel, Kenneth Stover, was present at the hearing, neither side called him to testify. (*See id.*)

The trial court denied the petition. (ECF No. 23-54). Matlean appealed. Matlean's appellate counsel appeal filed a renewed motion for evidentiary hearing in the trial court, along with a motion to stay appellate proceedings, both of which were denied. (ECF Nos. 23-58, 23-61, 23-65 & 23-66). In the end, the Nevada Supreme Court affirmed the trial court's decision. (ECF No. 23-72).

Matlean thereafter initiated the instant § 2254 proceedings. Several claims have been dismissed as untimely.[2] The remaining

---

[2] Matlean previously filed a motion for reconsideration of the court's dismissal of the claims as untimely. The motion was filed pursuant to the Ninth Circuit's decision *Ross v. Williams*, 896 F.3d 958, 961 (9th Cir. 2018). The court denied the motion, concluding that even under *Ross*, the claims were untimely. At the time of the court's order, the Ninth Circuit's decision was pending rehearing *en banc*. Since that time, the *en banc* opinion was issued. *Ross*, 2020 WL 878518 (9th Cir. 2020). The court has reviewed the opinion and all relevant pleadings on file in

claims of the second amended petition are before the court for consideration on the merits and/or a determination as whether Matlean has established cause and prejudice for the procedural default of the claims.

## II. Standards

A. Merits

28 U.S.C. § 2254(d) provides the legal standards for this Court's consideration of the merits of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is

---

this matter and concludes that the *en banc* decision does not change the court's finding as to the timeliness of the claims in this case. Importantly, although the *en banc* court expanded the range of documents attached to a petition that may be considered part of the petition for relation back purposes, it still held that facts in attached documents may be considered only to the extent they relate to facts and claims asserted in the body of the petition itself. *See id.* at *5. As the court previously noted, the petition in this case contains no claims and no facts. (ECF No. 35 at 4). Accordingly, none of the attached documents may be considered for relation back purposes.

limited to cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted.)

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Andrade*, 538 U.S. 63 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court

12

decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181. The state courts' decisions on the merits are entitled to deference under AEDPA and may not be disturbed unless they were ones "with which no fairminded jurist could agree." *Davis v. Ayala*, - U.S. -, 135 S. Ct. 2187, 2208 (2015).

B. Procedural Default

A procedural default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

**III. Analysis**

Grounds 1(B), 2, and 4 were addressed by the state courts on their merits. Grounds 3(B) and 6(A) were never raised to the state courts, so Matlean must demonstrate cause and prejudice before obtaining any relief on those claims.

A. Ground 1(B)

In Ground 1(B), Matlean asserts that his medication regime rendered him unable to enter a voluntary plea. (ECF No. 19 at 17). Matlean asserts that at the time of his guilty plea, medical records show he was under the influence of hydrocodone, trazadone,

and clonazepam. He argues that these medications can impair mental and physical abilities and induce drowsiness, and that in fact he was very drowsy and unaware of his surroundings when he changed his plea. Matlean points to his own testimony at the evidentiary hearing as support for his assertion, as well as his attorney's statement that he was too high to sign a change of plea.

The federal constitutional guarantee of due process of law requires that a guilty plea be knowing, intelligent and voluntary. *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011). "The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749. Those circumstances include "the subjective state of mind of the defendant . . . ." *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986).

Addressing the "standard as to the voluntariness of guilty pleas," the Supreme Court has stated:

> (A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds*, 356 U.S. 26 (1958)); *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (noting that the "longstanding test for determining

the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

In *Blackledge v. Allison*, 431 U.S. 63 (1977), the Supreme Court addressed the evidentiary weight of the record of a plea proceeding when the plea is subsequently subject to a collateral challenge. While noting that the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74; *see also Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012); *Little v. Crawford*, 449 F.3d 1075, 1081 (9th Cir. 2006).

Finding Matlean's plea voluntary, knowing and intelligent, the trial court held:

> The record pertaining to petitioner's guilty plea is indicative of a plea entered knowingly and voluntarily with the assistance of counsel. Statements made by counsel and petitioner during the change of plea process and the sentencing hearing, consistently exude a desire by petitioner to forgo trial out of a sense of remorse and with the stated purpose of not putting the victim's family through a trial. The record supports the decision to plead guilty was made against the advice of counsel.

> Consistent with petitioner's desire to plead guilty, counsel set petitioner on a strategic course designed to place petitioner in a position at sentencing to make the best argument for leniency. The first step in that process appears to have been to obtain a favorable plea negotiation from the State. To that end, petitioner provided a statement to the Douglas County Sheriff's Office wherein petitioner provided details

16

regarding his commission of the murder and the involvement of petitioner's girlfriend, Dawn Oxley.

Petitioner's statement was provided to the state nearly one year before petitioner pleaded guilty. Ultimately, counsel and petitioner were able to achieve favorable plea negotiations with the State. The benefits of the bargain for petitioner were substantial and included abandonment of the deadly weapon enhancement and recommendation from the State for a sentence of life with the possibility of parole in 20 years plus a consecutive 4 to 10 year sentence.

Whether born out of sincerity or mere strategy to obtain leniency at sentencing, the record consistently depicts petitioner as being remorseful and unwilling to put the victim's family through a trial. The record demonstrates that this was the course chosen by petitioner from a time well before the guilty plea was entered up until the time judgment was pronounced. Confessions to the Douglas County Sheriff's Office, Dr. Martha Mahaffey, and the Division of Parole and Probation, Dateline and statements made at the change of plea hearing, for instance, all support that this was the course chosen by petitioner. Petitioner did not make any indication at the sentencing hearing that he was desirous of withdrawing the plea.

….

Petitioner's testimony [at the evidentiary hearing] was not compelling, particularly when considered against the aforementioned record and his obvious current motivation to overturn his sentence. Much of petitioner's testimony was in direct conflict with the plea memorandum, the answers petitioner gave during the change of plea hearing held on December 20, 2011, and statements made at the sentencing hearing. During the course of his testimony, petitioner recognized the contradictions and claimed he had been dishonest with the court during the change of plea hearing. The court finds petitioner's testimony was not credible.

….

The record, including statements of the petitioner and counsel in the guilty plea memorandum and transcript from the change of plea hearing, directly refutes that petitioner was under the influence of prescription medication to a degree rendering him incompetent to enter a plea or that petitioner was otherwise confused about anything. Nor did the court observe any signs of confusion or being under the influence of medications. Petitioner did not list confusion or being under the influence of medication as a basis for plea withdrawal when he moved to withdraw his plea post-sentencing.

17

Petitioner has not armed the court with any basis upon which to distrust the record. During petitioner's testimony, he was unable to articulate a singular issue that he was confused about. Petitioner acknowledged that prior to changing his plea, he had previously gone through the process of a guilty plea in prior felony proceedings resulting in felony convictions. . . . The court finds petitioner's claim of confusion to be contrived.

(ECF No. 23-54 at 6-8).[3] On appeal, the Nevada Supreme Court held:

First, appellant contends that the district court erred by denying his claim that his guilty plea was not voluntary because he entered it while he was under the influence of medications. Appellant stated in his guilty plea agreement that he understood the consequences of pleading guilty and the rights he was giving up, despite any medications he was taking. This matter was also extensively discussed during the guilty plea canvass. *See Crawford v. State*, 117 Nev. 718, 722, 30 P.3d 1123, 1126 (2001) ("A thorough plea canvass coupled with a detailed, consistent, written plea agreement supports a finding that the defendant entered the plea voluntarily, knowingly, and intelligently"), overruled on other grounds by *Stevenson v. State*, 131 Nev., Adv. Op. 61, 354 P.3d 1277 (2015). And at the evidentiary hearing on his petition, appellant was unable to identify anything he may have misunderstood about the proceedings and eventually admitted that he simply regretted pleading guilty. Therefore, we conclude that the district court did not err in rejecting this challenge to the guilty plea.

(ECF No. 23-72 at 1-2).

Preliminarily, Matlean argues that the state courts' conclusions are not entitled to deference because they did not apply the appropriate standard. In fact, he argues, it is not clear what standard the courts applied in resolving his claim.

Matlean's argument is without merit. AEDPA review does not "require citation" or even awareness of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Here, the state courts' resolution of the claim depended on finding

---

[3] Citation is to ECF number at the top of the page.

18

that Matlean entered his plea knowingly, voluntarily, and intelligently. For all the reasons outlined by the trial court in its order denying Matlean's state court petition, Matlean made a conscious, knowing, voluntary and intelligent decision to enter his plea and he failed to demonstrate that the effects of any medications he was taking hindered his ability to comprehend what he was doing. The Nevada Supreme Court likewise concluded that Matlean knew he was entering a plea, had wanted to enter a plea, and had not established that he lacked the capacity to enter his plea. Even if the state courts had not applied the appropriate standard, which the court does not find, their findings at least do not conflict with the relevant standard, so deference to their decisions still applies.

Matlean argues that even if the state courts applied the correct standard, their decision was an unreasonable application of the law or an unreasonable determination of the facts.

Matlean argues that in denying his claim, the Nevada Supreme Court's was unreasonable in citing his written plea agreement, in which he represented he was not under the influence of any medications, because his medical records clearly demonstrate that this representation was false. He further argues that characterizing the plea canvass on this point as "extensive" was unreasonable because the court asked Matlean whether he was under the influence only a few times. He argues that the court's finding that he could not identify anything about the proceedings he misunderstood was not reasonable because he said several times during the evidentiary hearing that he was out of it and confused. And finally, Matlean argues that he never admitted that he had

buyer's remorse, despite the State's attempts to trick him into doing so, and that instead he steadfastly maintained he was confused, rendering the Nevada Supreme Court's contrary finding unreasonable.

Respondents' primary argument in opposition is that Matlean's representations at the evidentiary hearing were inconsistent with both his earlier representations to the court and with his other contentions during the evidentiary hearing, including his repeated assertion that he opted to change his plea because his attorney had promised him $20,000 to do so. Respondents argue that Matlean has introduced no evidence that his medications rendered him unable to enter a plea other than his own conclusory assertions. They point out that although Stover was present for the state court evidentiary hearing, Matlean did not call him to testify.

On this last point, Matlean replies that it was the State that declined to call Stover during the evidentiary hearing, so Matlean's assertion that Stover stated he was too high to plead remains uncontradicted.

None of Matlean's contentions is persuasive. As the trial court thoroughly outlined in its order denying Matlean's state court petition, Matlean's intent to plead guilty was evident for several months before ultimately changing his plea, and his responses during the change of plea hearing were cogent, appropriate and thorough, and did not in any way suggest that Matlean did not understand the proceedings or the fact he was pleading guilty. The trial court concluded that Matlean's late-raised assertion that he was under the effects of medications was contrived and lack credibility based on the entirety of the record

and the trial court's own observations during the change of plea. The Nevada Supreme Court's finding that Matlean's allegations lacked credibility was consistent with these findings. Matlean's assertion that his attorney stated he was too high to plead is not supported by anything other than his own self-serving allegation, and Matlean failed to develop any factual support for this claim during the state court proceedings despite having the clear ability to do so. The record fully supports the state courts' conclusions that Matlean's plea was knowing, voluntary and intelligent. This conclusion was neither an unreasonable application of the law nor an unreasonable determination of fact.

As the state courts were not objectively unreasonable in finding Matlean's plea was knowing, voluntary, and intelligent, Matlean is not entitled to relief on Ground 1(B).

B. Ground 2

In his second ground for relief, Matlean asserts that the prosecutor breached the guilty plea agreement by failing to abide by the spirit of the agreement. Specifically, Matlean argues that the State's misleading statements impacted Matlean's chances of receiving the parties' agreed-upon sentence. (ECF No. 19 at 19-23).

A defendant has a due process right to enforce the terms of his plea agreement. *Santobello v. New York*, 404 U.S. 257, 261-62 (1971). The Ninth Circuit has held that plea agreements "amount to, and should be interpreted as, a contract under state contract law." *Kernan v. Cuero*, 138 S. Ct. 4, 8 (2017); *see also Buckley v. Terhune*, 441 F.3d 688, 694-95 (9th Cir. 2006) (quoting *Ricketts v. Adamson*, 483 U.S. 1, 6 n. 3 (1987) ("[T]he construction and

interpretation of state court plea agreements 'and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law.'")).

Under Nevada law, "[w]hen the State enters into a plea agreement, it is held to the most meticulous standards of both promise and performance with respect to both the terms and the spirit of the plea bargain." *Sparks v. State*, 110 P.3d 486, 487 (Nev. 2005) (internal quotation marks omitted).

A prosecutor is not required to make an "enthusiastic" recommendation for an agreed-upon sentence, absent language to the contrary in the plea agreement. *United States v. Benchimol*, 471 U.S. 453, 455 (1985). However, it cannot

> superficially abide by [a] promise to recommend a particular sentence while also making statements that serve no practical purpose but to advocate for a harsher one. That is, the government breaches its bargain with the defendant if it purports to make the promised recommendation while winking at the district court to impliedly request a different outcome.

*United States v. Heredia*, 768 F.3d 1220, 1231 (9th Cir. 2014).

A due process violation occurs if the State breaches the plea agreement, whether or not it had any effect on the defendant's sentence. *United States v. Mondragon*, 228 F.3d 978, 981 (9th Cir. 2000) ("It is of no consequence that … the statements may have had no effect upon the sentence. The harmless error rule does not apply when the government breaches a plea agreement.").

Matlean argues that the primary question in the trial court's mind at sentencing was whether Matlean had been truthful when he gave his statement to the police, as evidenced by the several questions the court asked of the prosecutor. In response, he

asserts, the prosecutor gave misleading statements or refused to engage in the trial court's line of questioning. Matlean points to the following failures or misstatements by the prosecutor:

1.   He declined the court's explicit offer to present any evidence about whether Matlean's statement might be truthful, and expressly declined to offer his own opinion about whether Matlean or Dawn was telling the truth;

2.   When the court pointed out that the prosecutor's refusal to take a side was making sentencing difficult, he agreed before changing the subject;

3.   He failed to tell the court that even the preliminary hearing judge thought Dawn was "dancing around the truth" and possibly solicited Ben's murder, (ECF Nos. 23-3 (Tr. 154-55) & 23-4 (Tr. 74));

4.   He failed to point out that when Dawn first contacted police, her words reflected an obvious consciousness of guilt;

5.   He failed to point out that the testimony of Devin, Dawn's son, could provide corroborating evidence of Dawn's guilt;

6.   He failed to point out that the State had charged Matlean with conspiracy to murder Melissa, which must have meant the State believed Dawn was guilty;

7.   He failed to point out that Matlean's mother had submitted a letter to the State claiming to have seen Matlean with Dawn in the early morning hours after the murder was committed.

Matlean asserts that his statement to the police was truthful and that the prosecutor refused to tell the court that Matlean was being truthful in contravention of the parties' plea agreement.

The Nevada Supreme Court addressed Matlean's claim as follows:

> [A]ppellant James Kenneth Wayne Matlean contends that the State breached the plea agreement. Specifically, Matlean contends that the plea agreement required the State to make more than a bare recommendation for a sentence of life with the possibility of parole and that the State explicitly repudiated the plea agreement by implying that Matlean had been untruthful. We disagree. According to Matlean's plea agreement, the State was only obligated to recommend a sentence of life in prison with the possibility of parole and the State reserved the right to "comment upon the circumstances of the crime" and "correct factual misstatements made by the defendant." Here, the district court solicited information from the State about whether it believed Matlean's claim that his girlfriend conspired with him to commit the murder. Matlean's girlfriend denied any role in the conspiracy. The State responded to the district court's inquiry by stating that it was not sure which person was telling the truth about the girlfriend's role in the conspiracy. These comments were within the State's discretion to "comment upon the circumstances of the crime," and we conclude that the State did not breach its obligations under the plea agreement.

(ECF No. 23-40 at 1-2).

Matlean advances several arguments for why the state court's decision is not entitled to deference. However, reviewing the record as a whole, as well as the specific failures and statements of the prosecutor identified by Matlean, it is clear that the State did not violate either the express terms of the plea agreement or the spirit of the agreement. Because the court so concludes, it is unnecessary to address Matlean's several arguments as to why the state court's ruling is not entitled to deference. The court concludes there was no breach of the plea agreement for the reasons that follow.

The plea agreement required the State to recommend a sentence with the possibility of parole and allowed it to both offer

evidence in support of the agreement *and* "comment upon the circumstances of the crime". (ECF No. 23-25 at 2). It did not require the State to do anything more. It did not require the State to represent to the court that Matlean was in fact telling the truth in his statement.

The evidence and arguments Matlean focuses on to suggest he *was* telling the truth are hardly conclusive. The new evidence submitted by his mother, a letter from her attorney stating that she saw Matlean and Dawn together in the morning hours of February 21, 2008, is fully consistent with Dawn's testimony that after Matlean woke her up, telling her "It's done," she went with him to his mom's house to switch cars. (*Compare* ECF No. 23-34 at 7 *to* ECF No. 23-3 (Tr. 112-17)). The remaining points are merely arguments as to why Matlean should be believed over Dawn, many of which were raised by defense counsel during sentencing, at prior hearings before the court, and/or were included in Matlean's PSR. Previously, at arraignment, defense counsel had told the court that Dawn's testimony could not be believed. At sentencing, counsel argued that Dawn lied through her teeth during the preliminary hearing. He pointed out that Dawn's own son testified that the night before the murder, Dawn was ranting and raving angry at Ben, and stated that she wanted him off the face of the earth. (ECF No. 23-30 at 46-47). He pointed out that Dawn's first words to the police were "I did it." (*Id.* at 52).

Thus, most of the issues Matlean asserts the prosecutor should have raised were in fact raised by Matlean's own attorney. Further, it is not fair to construe the prosecutor's statements as having "no practical purpose but to advocate for a harsher" sentence.

*Heredia*, 768 F.3d at 1231. Rather, the prosecutor, in direct response to the court's inquiry, advised the court that there was insufficient evidence to establish whether Matlean or Dawn was telling the truth. Therefore, the record reflects the prosecutor did not violate the plea agreement's express terms or its spirit. Matlean is not therefore entitled to relief.

### C. Ground 3(B)

In Ground 3(B), Matlean asserts that trial counsel was ineffective for allowing him to plead guilty despite knowing that Matlean's medications were impairing his ability to change his plea. (ECF No. 19 at 25). The court previously found this claim technically exhausted but procedurally defaulted. (ECF No. 28 at 6-8). Matlean concedes that under the law as it stands, he cannot excuse the default of this claim.[4] (ECF No. 44 at 37). Accordingly, Ground 3(B) will be dismissed as procedurally defaulted.

### D. Ground Four

In his fourth ground for relief, Matlean asserts that trial counsel was ineffective for failing to file a motion to withdraw plea when Matlean asked him to do so. (ECF No. 19 at 27).

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*,

---

[4] The only grounds Matlean would advance to excuse the default would be under *Martinez v. Ryan*, 566 U.S. 1 (2012). However, Matlean recognizes that *Martinez* applies only if the failure to raise a claim is attributable to lack of or deficient performance by counsel on initial postconviction review. Here, Matlean had counsel and counsel did in fact raise this claim on initial review. The claim is unexhausted because it was not raised by counsel on appellate review. *Martinez* does not provide any exception for a default under these circumstances. *Id.* at 16 (declining to extend exception to "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts").

26

a petitioner must satisfy two prongs to obtain habeas relief—deficient performance by counsel and prejudice. 466 U.S. at 687. With respect to the performance prong, a petitioner must carry the burden of demonstrating that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). In assessing prejudice, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Id.* at 696.

The trial court held, in pertinent part, that Matlean had suffered no prejudice as a result of his attorney's failure to file a motion to withdraw the plea because any such motion would have been denied. (ECF No. 23-54 at 8-9). The Nevada Supreme Court agreed, holding:

> Third, appellant contends that the district court erred by denying his claim that counsel was ineffective "because [he] . . . attempted to withdraw his guilty plea three times before sentencing but trial counsel refused." . . . . To the extent appellant argues that counsel was ineffective for failing to move to withdraw his plea before sentencing, the district court concluded that the motion would not have been granted because appellant was unable to articulate any valid grounds to withdraw his plea. *See* NRS 176.165. We agree. *See Lader v. Warden*, 121 Nev. 682, 686, 120 P3d 1164, 1166 (2005) (giving deference to the district court's factual findings but reviewing its legal conclusions de novo). Therefore, we conclude that no relief is warranted on this claim.

(ECF No. 23-72 at 2-3).

27

Matlean's first argument is that defendants have an absolute right to seek to withdraw their pleas, so counsel's refusal to file a motion to withdraw plea violates his right to effective assistance of counsel whether or not the refusal resulted in any prejudice. Matlean bases his argument on *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018), recognizing that certain decisions, including the right to decide whether to plead guilty, rest entirely in the defendant's hands, and *Roe v. Flores*, 528 U.S. 470 (2000), which holds that courts will presume prejudice if an attorney fails to file a notice of appeal despite being asked to do so by the defendant. While recognizing that the argument he makes is not one that has been explicitly decided by the U.S. Supreme court, Matlean argues that the Nevada Supreme Court's refusal to extend relevant Supreme Court precedent to recognize an absolute right to seek to withdraw the plea was unreasonable.

"Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [the Supreme] Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S. 415, 426 (2014). "'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *Id.*

> The difference between applying a rule and extending it is not always clear, but certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt. The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question.

*Id.* at 427 (citations and internal punctuation omitted). Whether Supreme Court case law, as it existed at the time of Matlean's sentencing, required a presumption of prejudice to apply where an attorney fails to file a requested motion to withdraw plea is a matter that could be debated among fairminded jurists. Thus, the Nevada Supreme Court could not have been objectively unreasonable in failing to extend Supreme Court case law to that context. The Nevada Supreme Court's decision therefore remains subject to deferential review.

Matlean next argues that even if the state courts were not unreasonable in requiring a finding of prejudice to succeed on this claim, they did not apply the appropriate standard, so their conclusion is still not entitled to deference. Specifically, Matlean asserts that the state courts required him to show his motion would have been granted instead of inquiring into whether there was a reasonable probability that it would have been granted, as required under *Strickland*.

Matlean's argument is without merit. The state courts' conclusion that his motion would not have been granted is tantamount to holding there was no reasonable probability it would have been granted. The state courts applied the correct standard to Matlean's claim.

Turning to the merits, Matlean clearly asked his attorney at least once to withdraw his plea before sentencing, as that point was conceded by Mr. Stover more than once. Whether it was deficient for Stover to refuse to file the motion is not a matter that need be discussed, however, because the Nevada Supreme Court

resolved the claim on prejudice grounds alone, and that finding was not objectively unreasonable.

At the time Matlean would have sought to withdraw his plea, such a motion would have been granted only if the trial court found it was not voluntary, knowing, or intelligent. *Crawford v. State*, 30 P.3d 1123, 1125-26 (Nev. 2001); *see also Stevenson v. State*, 354 P.3d 1277, 1280 (Nev. 2015). Given the extensive plea canvass and Matlean's actions leading up to the change of plea, it is objectively reasonable to conclude that the trial court would not have allowed Matlean to withdraw his plea. The trial court itself noted it would not likely have granted such a motion, and this conclusion is supported by the record.

Although Matlean asserts he would have won such a motion, his arguments are not persuasive. Matlean asserts he would have won a motion on all the grounds asserted in his petition, including his assertion that he entered a plea only because his attorney promised him $20,000 to do so. To the extent Matlean asserts that a motion to withdraw plea on this basis would have been granted, the state courts considered this contention explicitly in reaching their holding. (*See* ECF No. 23-54 at 9). The state courts' conclusions were not objectively unreasonable.

Thus, the state courts were not objectively unreasonable in finding no prejudice on account of counsel's failure to file a motion to withdraw plea. As such, Matlean is not entitled to relief on his Ground Four of the petition.

E. Ground 6(A)

In Ground 6(A), Matlean asserts that trial counsel was ineffective for failing to object to the prosecutor's misleading

statements at sentencing and should have explained all the reasons Matlean should be believed over Dawn. (ECF No. 19 at 30). He argues that if counsel had done more, it is reasonably likely he would have received a more beneficial sentence. (*Id.*)

As previously held by the court, this claim is procedurally defaulted, and to obtain relief, Matlean must demonstrate cause and prejudice. It is unnecessary to address this threshold matter, however, as Matlean's claim is without merit.

Matlean's claim is, essentially, that counsel should have raised all the arguments set forth in Ground Two, *supra*, save one,[5] and that his failure to do so was ineffective. As previously discussed, Matlean's attorney did, in fact, raise most of the arguments he asserts should have been raised. The remaining arguments were not on the whole conclusive evidence that Matlean told the truth. The strongest evidence – Devin's testimony – *was* raised by defense counsel. (ECF No. 23-30 at 46-47). Because counsel raised the strongest arguments Matlean had to discredit Dawn, his representation was not deficient. For the same reasons, there is no reasonable probability that the outcome of the proceedings would have been different had counsel raised *all* the arguments Matlean believes should have been raised. For those reasons, Matlean has failed to establish ineffective assistance of counsel and is not therefore entitled to relief on Ground 6(A).

---

[5] Matlean concedes that his attorney did not have the letter from his mother before sentencing and thus could not have raised this point during the proceedings.

## IV. Motion for Evidentiary Hearing

Matlean seeks an evidentiary hearing on several points. With respect to all but one point, the court has resolved the petition without addressing the matters sought to be developed by Matlean in an evidentiary hearing, and for that reason the motion for evidentiary hearing on those grounds will be denied.

The sole exception is Matlean's request that he be allowed to present expert testimony of the effects of the medications he was taking at the time of his change of plea. Because this claim was resolved by the state courts on the merits, and their findings of fact were not objectively unreasonable, the court is limited to considering the state court record to resolve this claim. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Accordingly, an evidentiary hearing is not authorized, and the motion for such will be denied.

## V. Certificate of Appealability

In order to proceed with an appeal, Matlean must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Allen*, 435 F.3d at 951; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen*, 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, Matlean

has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

The court has considered the issues raised by Matlean, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. Accordingly, Matlean will be denied a certificate of appealability.

**VI. Conclusion**

In accordance with the foregoing, IT IS THEREFORE ORDERED that the second amended petition (ECF No. 19) is DENIED WITH PREJUDICE, and this action is therefore DISMISSED.

IT IS FURTHER ORDERED that Matlean's motion for evidentiary hearing (ECF No. 45) is DENIED.

IT IS FURTHER ORDERED that Matlean is DENIED a certificate of appealability.

The Clerk of Court shall enter final judgment accordingly and CLOSE this case.

IT IS SO ORDERED.

DATED: This 9th day of March, 2020.

_____
UNITED STATES DISTRICT JUDGE